*E-FILED - 8/2/10*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN FORREST ZUMBRO,<br><br>                 Petitioner,<br><br>  v.<br><br>B. CURRY,<br><br>                 Respondent. | No. C 08-4786 RMW (PR)<br><br>ORDER DENYING PETITION FOR<br>WRIT OF HABEAS CORPUS;<br>DENYING CERTIFICATE OF<br>APPEALABILITY |

Petitioner, a state prisoner proceeding pro se, sought a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a decision by the California Board of Parole Hearings ("Board") in finding him unsuitable for parole. Respondent was ordered to show cause why the writ should not be granted. Respondent has filed an answer, along with a supporting memorandum of points and authorities and exhibits. Petitioner has responded with a traverse. For the reasons set forth below, the petition for a writ of habeas corpus is **DENIED**.

**BACKGROUND**[1]

A.    Commitment Offense

On October 7, 1982, petitioner and Gary Robinson met at McDonald's. (Tr. At 11.)

---

[1] The relevant facts are taken from the Transcript of the October 12, 2006 Subsequent Parole Consideration Hearing. (Resp. Ex. 1, Ex. A, Transcript ("Tr.") at 10-14.)

1  Petitioner told Robinson that he had recently been in jail and suggested that they go for a ride

2  together on the Pacific Coast Highway.  (Id.)  Petitioner and Robinson followed a couple of girls

3  into the Malibu Inn, where petitioner showed Robinson his .44 magnum barrel revolver.  (Id.)

4  Robinson got scared and left the petitioner, who appeared at that time to be sober but throughout

5  the night had had up to ten beers.  (Id. at 11-12.)  David Cantwell, another witness, stated that he

6  saw petitioner at the bar and when Cantwell was on his way to the restroom, he asked petitioner

7  to move out of the way, to which petitioner challenged him to a fight.  (Id. at 12.)  At that time,

8  Cantwell noticed petitioner was actually in the middle of arguing with the victim, Gregory

9  Matthews.  (Id.)  Stephanie Peterson, another witness at the Malibu Inn, saw petitioner arguing

10  with the victim.  (Id.)  Robert Rowan, an employee of the Malibu Inn, observed petitioner and

11  the victim go outside, talk for a while, and then shake hands even though they appeared to have

12  argued prior to that.  (Id. at 13.)  Ten minutes later, petitioner and the victim walked to the other

13  side of the parking lot when Rowan heard a shot, and he saw the victim running while holding

14  his chest and screaming.  (Id.)  Following the victim was petitioner, who was holding a gun and

15  threatening him.  (Id. at 13-14.)  According to an autopsy, the victim died of a single gunshot

16  wound to the chest.  (Id. at 14.)

17  In 1984, petitioner was convicted of second degree murder with the use of a firearm,

18  grand theft of a firearm, and grand theft of an automobile.  Petitioner was sentenced to 18-years

19  4 months to life.

20  B.   2006 Board Hearing

21  Petitioner had been incarcerated for approximately 23 years at the time of his October 12,

22  2006 parole suitability hearing.  This was petitioner's seventh parole suitability hearing.

23  (Petition at 1.)  His minimum parole date was October 13, 1996.  (Tr. at 1.)  He was represented

24  by counsel at the hearing.  (Id. at 2.)  Petitioner exercised his right not to talk about the

25  underlying offenses.  (Id. at 14.)

26  After reviewing the facts of the underlying commitment offense, the Board discussed

27  petitioner's family and social history.  (Id. at 15-18.)  In reviewing petitioner's prior convictions,

28  the Board noted that petitioner was first arrested as a juvenile on August 1, 1980 for burglary.

1   (Id. at 18.)  In 1981, petitioner was arrested for shooting an occupied dwelling after he got into

2   an argument with his brother.  (Id. at 18-19.)  Then, in 1981, petitioner pleaded guilty to another

3   burglary.  (Id. at 21.)  In 1982, petitioner pleaded guilty to resisting arrest after he was pulled

4   over for driving while intoxicated and he got into an argument with the police officer.  (Id. at 21-

5   22.)

6       While incarcerated, petitioner has completed auto mechanics, furniture factory and

7   textiles programs.  (Id. at 23.)  Petitioner achieved his GED in 1991.  (Id. at 24.)  The Board

8   recognized that petitioner had an above average work supervisor report and had a satisfactory

9   work supervisor's report while working in the culinary.  (Id.)  In 2004, petitioner received a

10  certificate of proficiency for being a sewing machine operator.  (Id. at 25.)

11      Petitioner has not received any psychiatric treatment nor has he participated in any self-

12  help programs with the exception of Alcoholics Anonymous ("AA").  (Id. at 25-26.)  Although

13  petitioner was currently on a waiting list to get into AA, he had participated in it for

14  approximately 15 years.  (Id. at 26-27.)  Petitioner explained that he was having the most

15  difficulty with the eighth step of "making amends" because it was hard to contact all the people

16  necessary while incarcerated.  (Id. at 28.)  Petitioner also stated that he was not a very religious

17  person and wished that there were more substance abuse programs that were not so religion-

18  based.  (Id.)

19      The Board read petitioner's two laudatory chronos that he received since his last parole

20  hearing.  (Id. at 29-30.)  Petitioner acknowledged that he has had three 115s, the last one of

21  which was received on November 16, 2000 for mutual combat.  (Id. at 30.)  Petitioner has also

22  incurred seventeen 128s, the last one of which was received on February 10, 2003 for failing to

23  report to work.  (Id.)  Petitioner's 2006 psychological evaluation was generally positive and

24  indicated that within a controlled setting, petitioner's potential for violence was low to average.

25  (Id. at 31.)  Petitioner had no updated letters of support nor any potential residence address if

26  released on parole.  (Id. at 34-35.)  Petitioner indicated that his brother, who lives "back east"

27  continues to offer his financial help.  (Id. at 35-37.)  Finally, petitioner spoke on his own behalf

28  and expressed his sorrow and remorse for the commitment offense, reiterated his progress and

1  efforts while incarcerated both in terms of marketable skills and self-improvement, and asked for
2  an opportunity to show that he has changed.  (<u>Id.</u> at 49-51.)

3          Ultimately, the Board denied parole.  It explained that the commitment offense was done
4  in an especially cruel and callous manner because it was carried out in a manner that
5  demonstrated a callous disregard for human life and suffering.  (<u>Id.</u> at 52.)   Moreover, the Board
6  explained that the motive for the crime was very trivial in relation to the crime.  (<u>Id.</u> at 53.)  The
7  Board also commented on petitioner's previous criminal history, including shooting into his
8  brother's apartment, a few burglary charges, and arguing and resisting arrest with a police
9  officer.  (<u>Id.</u> at 54.)  The Board commended petitioner on achieving his GED, continuing to
10  participate in AA, and becoming certified in several vocations.  (<u>Id.</u> at 54-55.)  The Board also
11  commented on petitioner's last receipts of 128s and 115s and recognized that his last
12  psychological evaluation was supportive of release.  (<u>Id.</u> at 55.)  Finally, the Board indicated
13  concern that petitioner had no parole plans in place.  (<u>Id.</u> at 56.)  The Board denied parole for one
14  year and recommended that petitioner remain disciplinary free and continue to upgrade himself.
15  (<u>Id.</u>)

16  C.      <u>State Court Decisions Regarding the 2006 Denial</u>

17          Petitioner filed a state habeas petition in superior court challenging the denial of his
18  parole.  The superior court denied petitioner's petition on November 8, 2007.  (Resp. Ex. 2.)
19  The superior court concluded that there was some evidence to support the denial of parole.  (<u>Id.</u>
20  at 2.)  Specifically, the court found that the motive for the commitment offense was very trivial
21  in relation to the offense and that petitioner had a previous record of violence.  (<u>Id.</u>, citing Cal.
22  Code Regs., tit. 15, §§ 2404, (c)(1)(E) and (c)(2).)

23          The California Court of Appeal also denied his petition on February 13, 2008.  (Resp. Ex.
24  4.)  The California Supreme Court denied his petition on August 13, 2008.  (Resp. Ex. 6.)
25  Petitioner thereafter filed the instant petition on October 17, 2008.

26                                          **DISCUSSION**

27  A.      <u>Standard of Review</u>

28          A district court may not grant a petition challenging a state conviction or sentence on the

1    basis of a claim that was reviewed on the merits in state court unless the state court's

2    adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

3    unreasonable application of, clearly established Federal law, as determined by the Supreme

4    Court of the United States; or (2) resulted in a decision that was based on an unreasonable

5    determination of the facts in light of the evidence presented in the State court proceeding."  28

6    U.S.C. 2254(d).  The first prong applies both to questions of law and to mixed questions of law

7    and fact, <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 407-09 (2000), while the second prong

8    applies to decisions based on factual determinations, <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340

9    (2003).

10           A state court decision is "contrary to" Supreme Court authority, that is, falls under the

11   first clause of 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached

12   by [the Supreme] Court on a question of law or if the state court decides a case differently than

13   [the Supreme] Court has on a set of materially indistinguishable facts."  <u>Williams (Terry)</u>, 529

14   U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court

15   authority, falls under the second clause of 2254(d)(1), if it correctly identifies the governing

16   legal principle from the Supreme Court's decisions but "unreasonably applies that principle to

17   the facts of the prisoner's case."  <u>Id.</u> at 413.  The federal court on habeas review may not issue

18   the writ "simply because that court concludes in its independent judgment that the relevant state-

19   court decision applied clearly established federal law erroneously or incorrectly."  <u>Id.</u> at 411.

20   Rather, the application must be "objectively unreasonable" to support granting the writ.  <u>See id.</u>

21   at 409.

22           "Factual determinations by state courts are presumed correct absent clear and convincing

23   evidence to the contrary."  <u>Miller-El</u>, 537 U.S. at 340.  Under 28 U.S.C. 2254(d)(2), a state court

24   decision "based on a factual determination will not be overturned on factual grounds unless

25   objectively unreasonable in light of the evidence presented in the state-court proceeding."

26   <u>Miller-El</u>, 537 U.S. at 340; <u>see also</u> <u>Torres v. Prunty</u>, 223 F.3d 1103, 1107 (9th Cir. 2000).

27           When there is no reasoned opinion from the highest state court to consider the

28   petitioner's claims, the court looks to the last reasoned opinion.  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501

1   U.S. 797, 801-06 (1991); Shackleford v. Hubbard, 234 F.3d 1072, 1079, n.2 (9th Cir. 2000).  In

2   this case, the last reasoned opinion is that of the superior court denying petitioner's habeas

3   petition (Resp. Ex. 2).

4   B.    Petitioner's Claims

5          As grounds for federal habeas relief, petitioner asserts that the decision to deny parole

6   was not supported by "some evidence," and thus violated his right to due process.

7          The Due Process Clause does not, by itself, entitle a prisoner to release on parole in the

8   absence of some evidence of his or her "current dangerousness."  Hayward v. Marshall, 603 F.3d

9   546, 555, 561 (9th Cir. 2010) (en banc).  Under California law, however, "some evidence" of

10  current dangerousness is required in order to deny parole.   Id. at 562 (citing In re Lawrence, 44

11  Cal.4th 1181, 1205-06 (2008) and In re Shaputis, 44 Cal.4th 1241 (2008)).  This requirement

12  gives California prisoners a liberty interest protected by the federal constitutional guarantee of

13  due process in release on parole in the absence of "some evidence" of their current

14  dangerousness.  Cooke v. Solis, 606 F.3d 1206, 1213-1214 (9th Cir. 2010).

15         When a federal habeas court in this circuit is faced with a claim by a California prisoner

16  that his right to due process was violated because the denial of parole was not supported by

17  "some evidence," the court "need only decide whether the California judicial decision approving

18  the governor's decision rejecting parole was an 'unreasonable application'[] of the California

19  'some evidence' requirement, or was 'based on an unreasonable determination of the facts in

20  light of the evidence.'"  Hayward, 603 F.3d at 562-63 (quoting 28 U.S.C. 2254(d)(1)-(2)); Cooke,

21  606 F.3d at 1213.  California's "some evidence" requirement was summarized in Hayward as

22  follows:

23         As a matter of California law, 'the paramount consideration for both the Board
           and the Governor under the governing statutes is whether the inmate currently
24         poses a threat to public safety.'  There must be 'some evidence' of such a threat,
           and an aggravated offense 'does not, in every case, provide evidence that the
25         inmate is a current threat to public safety.'  The prisoner's aggravated offense
           does not establish current dangerousness 'unless the record also establishes that
26         something in the prisoner's pre- or post- incarceration history, or his or her
           current demeanor and mental state' supports the inference of dangerousness.
27         Thus, in California, the offense of conviction may be considered, but the
           consideration must address the determining factor, 'a current threat to public
28         safety.'

1  Hawyard, 603 F.3d at 562 (quoting Lawrence, 44 Cal.4th. at 1191, 1210-14); see Cooke, 606

2  F.3d at 1213-1214 (describing California's "some evidence" requirement).  Under California

3  law, "the aggravated nature of the crime does not in and of itself provide some evidence of

4  current dangerousness to the public unless the record also establishes something in the prisoner's

5  pre- or postincarceration history, or his or her current demeanor and mental state, indicates that

6  the implications regarding the prisoner's dangerousness that derive from his or her commission

7  of the commitment offense remain probative of the statutory determination of a continuing threat

8  to public safety."  Lawrence, 44 Cal.4th at 1214 (emphasis in original); see Hayward, 603 F.3d

9  at 562 (same).

10      The commitment offense was certainly committed in an especially cruel and callous

11  manner in that the motive for the crime was inexplicable.  See Cal. Code Regs., tit. 15, §

12  2402(c)(1)(E).  After ingesting ten to fourteen beers, petitioner began to get belligerent and

13  proceeded to get into an argument with the victim.  (Tr. at 12-13.)  At one point, a witness stated

14  that petitioner and victim shook hands and the argument appeared to have been resolved.  (Id. at

15  13.)  Petitioner and the victim went outside and about ten minutes later, petitioner shot the victim

16  and the victim died.  (Id.)  Petitioner was subsequently picked up in Riverside County with a

17  stolen car as well as the murder weapon.  (Id. at 40.)

18      Certainly, a considerable amount of time had passed since the commitment offense, and

19  at the time of the hearing, petitioner had served ten years over his minimum parole date.  Even

20  aside from the fact that the commitment offense had an inexplicable motive, however, there was

21  other evidence that reasonably demonstrated petitioner was still a current threat to society if

22  released.  There was evidence in petitioner's "pre-incarceration behavior," specifically his prior

23  juvenile and adult criminal history which indicated that petitioner had a history of becoming

24  violent when angry or intoxicated -- both of which were factors in the commitment offense.  (Id.

25  at 54.)  Further, his "post-incarceration" record demonstrated some evidence that petitioner was

26  still a current threat to society.  Specifically, petitioner's disciplinary record showed that his last

27  serious report was merely six years earlier for mutual combat.  (Id. at 55.)  In addition,

28  petitioner's complete lack of parole plans made it unclear how he planned on supporting himself

1   or establishing a degree of self-sufficiency.  These factors indicated "that the implications

2   regarding the prisoner's dangerousness that derive from his [ ] commission of the commitment

3   offense remain probative of the statutory determination of a continuing threat to public safety."

4   See Lawrence, 44 Cal.4th at 1214.

5          Thus, the state courts, in upholding the Board's decision, reasonably applied California's

6   "some evidence" requirement and reasonably determined the facts in light of the evidence in the

7   record.  See Hayward, 603 F.3d at 563; see also Shaputis, 44 Cal.4th at 1260-61 ("As long as the

8   . . . decision reflects *due consideration of the specified factors* as applied to the individual

9   prisoner in accordance with applicable legal standards, the court's review is limited to

10  ascertaining whether it is some evidence in the record that supports the . . . decision.") (emphasis

11  in original).  Therefore, the state courts' denial of petitioner's federal due process claim was

12  neither contrary to nor an unreasonable application of federal law, and petitioner is not entitled

13  to habeas relief.

**CONCLUSION**

15         The petition for a writ of habeas corpus is DENIED.

16         Rule 11(a) of the Rules Governing Section 2254 Cases now requires a district court to

17  rule on whether a petitioner is entitled to a certificate of appealability in the same order in which

18  the petition is denied.  Petitioner has failed to make a substantial showing that his claims

19  amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would

20  find the denial of his claim debatable or wrong.  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

21  Consequently, no certificate of appealability is warranted in this case.

22         The clerk shall enter judgment and close the file.

23         IT IS SO ORDERED.

24  DATED: ___7/30/10___

                    *Ronald M. Whyte*
25                  RONALD M. WHYTE
                    United States District Judge